UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FIRST SPECIALTY INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MAINE COAST MARINE CONSTRUCTION, INC., *et al.*, | ) ) ) ) |
| Defendant. | ) |

Civil No. 06-119-B-MJK

**MEMORANDUM OF DECISION**[1]

First Specialty Insurance Corporation filed suit seeking a declaration that it has no duty to defend or indemnify the defendants in connection with losses and liabilities arising from the grounding of certain vessels on Plum Island, Newbury, Massachusetts. This Memorandum of Decision addresses First Specialty's motion for summary judgment premised on certain exclusions in the policy it issued to defendant Maine Coast Marine Construction. The motion concerns First Specialty's duty to defend, exclusively. Defendant Fore River Dock & Dredge, Inc., filed a cross-motion for summary judgment requesting a declaration that both Fore River and Maine Coast are insured under the Policy. That motion is joined by defendants CB Marine and Guy Splettstoesser. I held a telephonic hearing on July 23, 2007. As a result of that hearing, I learned that the issues have been narrowed appreciably due primarily to the fact that the American Home Assurance Company's lawsuit in the District of Massachusetts has settled. The issues remaining in these motions are limited to First Specialty's duty to defend in the Ablow

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

lawsuit and the issue of whether Fore River is an additional insured under the policy. I deny First Specialty's motion and grant, in limited part, Fore River's cross-motion.

## SUMMARY JUDGMENT FACTS

The following statement of facts is drawn from the parties' Local Rule 56 statements of material fact in accordance with this District's summary judgment practice. See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the procedure); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56). When a statement offered by a party is uncontested and is supported by a citation to record material having evidentiary quality, the statement has been set forth herein essentially as offered. When a statement of fact is contested and the evidentiary record is capable of supporting alternative findings of fact, the statement in dispute has been characterized for purposes of summary judgment in the manner that favors the non-movant. Merch. Ins. Co. v. U. S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).

This declaratory judgment action concerns an insurance policy issued by First Specialty Insurance Corporation to Maine Coast Marine Construction, Inc., a former Maine corporation with its principal place of business in South Portland, Maine. (Docket No. 56 ¶¶ 1-2.) On or about December 11, 2002, a tugboat known as *Seawind II* and a barge known as *Barge DS64* grounded on or near the beach of Plum Island, Newbury, Massachusetts. (Id. ¶ 3.) The accident has given rise to at least three lawsuits. (Id. ¶ 4.) For present purposes, due to settlement agreements among the parties, the only underlying lawsuit relevant to the pending motions is the Ablow suit.

### *The Ablow suit*

Keith R. Ablow, the owner of the real estate where the vessels grounded, filed suit in the United States District Court for the District of Massachusetts against Fore River, Maine Coast and C-B. Ablow asserts claims of negligence, trespass and nuisance against each entity. C-B filed a crossclaim against Maine Coast. Ablow does not make any allegation concerning the length of the vessels. Nor does he make any allegation concerning the use to which the vessels were being put. Ablow alleges consequential damages, a plea that is not necessarily restricted to property damage. Ablow alleges that each of the defendants in the suit "owned, operated, chartered and/or controlled" the vessels that grounded on his property, which can be read, in the alternative, as asserting that they all did or that any one of them did. (Ablow Compl., Docket No. 23-5.)

### *The Policy*

The policy attached to First Specialty's motion for summary judgment, Policy PGL 77658, consists of 43 pages, including two declarations pages and numerous endorsements. The parties' memoranda focus on the pertinent provisions, which are as follows.

The Common Policy Declarations page identifies Maine Coast Marine Construction as the named insured and identifies Maine Coast as a corporation. The declarations page also identifies the insurance policy as extending Commercial General Liability Coverage. (Policy at 6, Docket No. 56-5.) The Policy elsewhere indicates that the executive officers and directors of an insured corporation are also insured, "but only with respect to their duties as . . . officers or directors." (Id. at 22, § II.1.d.) Employees performing acts within the scope of their employment are also insured. (Id. § II.2.a.)

In exchange for premiums First Specialty agreed to pay obligations arising from bodily injury or property damage. Bodily injury is defined as "bodily injury, sickness, or disease sustained by a person , including death resulting from any of these at any time." (Id. at 25, § V.3.) Property damage is defined to include physical injury to, and loss of use of, tangible property. (Id. at 28, § V.15.) Coverage applies when damage is caused by an "occurrence." (Id. at 16.) Occurrence is defined as "an accident." (Id. at 27, § 12.)

*Exclusion g*

Exclusion g of the Policy excludes coverage for property damage "arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured." (Id. at 18, § g.) However, the exclusion does not apply to watercraft less than 26 feet in length that are not being used to carry persons or property for a charge, unless the insured owns the watercraft. (Id., § g.2.)

*Exclusion j.4*

Exclusion j.4 of the Policy excludes coverage for property damage to "personal property in the care, custody or control of the insured."

*Professional services exclusion*

The Policy includes an endorsement that excludes coverage for all professional services. It tersely states that the insurance does not apply to property damage "due to the rendering or failure to render any professional service." (Id. at 40.)

*Additional insured endorsement*

The Policy contains another endorsement that extends insured status to "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an

4

additional insured on your policy." That extension of coverage to additional entities does not apply to property damage "arising out of the rendering of or failure to render, any professional architectural, engineering or surveying services." (Id. at 41.)

### *Additional Record Facts*

Apart from the allegations in the underlying actions, Fore River asserts in its summary judgment statement of material facts that the *Sea Wind II* is, in fact, less than 26 feet in length. (Docket No. 62 ¶ 8.) First Specialty fails to controvert this statement, which I treat as admitted for purposes of summary judgment. The summary judgment papers do not address the length of the barge.

First Specialty's agent issued Fore River a Certificate of Insurance naming Fore River as an additional insured on the Policy. (Docket No. 62 ¶ 33; Docket No. 80 ¶¶ 2, 6.) The certificate bears a disclaimer: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." In another section of the certificate reserved for, among other things, "special provisions," the certificate reads: "The certificate holder [Fore River] is *hereby* named as an additional insured with respects [sic] to the general liability policy stated above [PGL77658] regarding the named insured[']s operations only." (Docket No. 62-16, emphasis added.) The certificate is signed by Lee Ramsdell of Clark Associates in a box labeled "authorized representative." (Docket No. 91 ¶ 6.)

Guy Splettstoesser operated the *Seawind II* on December 11, 2002. (Docket No. 80 ¶ 1.) Mr. Splettstoesser sometimes performed side work for Fore River when Maine Coast was slow or during evening hours when Maine Coast was not operating. (Id. ¶ 7.) Splettstoesser testified that he went to Gloucester, Massachusetts, on several occasions to operate a tugboat in the

5

evening to haul mud for Fore River, that Maine Coast did not perform any work on the job that relates to the underlying grounding incident of December 11, 2002, and that he expected to receive payment as an independent contractor for his work on that job. (Id. ¶¶ 8-16.) Similarly, Jimmy LaPlante, Maine Coast's president, testified at his deposition that Fore River hired Splettstoesser, directly, to captain the *Seawind II*, and that Maine Coast was not retained for the project in question. (Id. ¶¶ 17-24.) Fore River responds by citing additional passages in the Splettstoesser deposition where he states that Maine Coast always sent an invoice for his work on the *Seawind*, but never for work he performed on the *Albany*. (Docket No. 91, ¶ 14, citing Splettstoesser Dep. at 103-104, 144.) However, in that testimony Splettstoesser indicates that he had never before captained the *Seawind* outside of Maine, outside of Maine Coast's operating hours (7 a.m. to 4 p.m.), or all on his own, whereas all three of these conditions existed in relation to his work on December 11, 2002. (Splettstoesser Dep. at 103-104.) Fore River more productively cites deposition testimony provided by Roger Hale, Jr., a founder and officer of Fore River, in which it is asserted that he asked Maine Coast, through Guy Splettstoesser, to do the job. (Docket No. 91 ¶ 14; Hale Dep. at 50-52, 57.) Although the testimony is not particularly clear on that point, it is sufficient to generate a genuine issue of fact whether Splettstoesser was working for Fore River on December 11, 2002, or whether he was performing a job as an employee of Maine Coast, albeit inconsistently with Maine Coast's business practices.

## DISCUSSION

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required." Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002). A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and

6

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation.  Merch. Ins. Co. v. U. S. Fid. & Guar. Co., 143 F.3d at 7.  If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied.  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

The parties are in agreement that Maine law governs First Specialty's duties to defend. They all cite Maine precedent in support of their statements of the governing legal standard. Pursuant to Maine common law, it is a question of law whether an insurer owes its insured a duty to defend.  Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005).  "Maine resolves the question of 'whether there exists a duty to defend . . . by comparing the [underlying] complaint with the terms of the insurance contract.'"  Id. (quoting Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998)).  For the duty to defend to exist, the allegations of the underlying complaint must raise a "potential for liability within the coverage and contain[] no allegations of fact which would necessarily exclude coverage."  Travelers Indem. Co. v. Dingwell, 414 A.2d 220, 227 (1980).  "This is the case even when the undisputed facts show the injury in question was not covered by the policy."  Bucci, 393 F.3d at 290.

7

> Under this comparison test, the insurer has a duty to defend if the underlying complaint discloses a "potential or a possibility" for liability within the policy's coverage. Significantly, the duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify. Maine requires that insurance policies be interpreted most strongly against the insurer. Any ambiguity must be resolved in favor of a duty to defend.

Id. (some internal quotation marks omitted) (citing and quoting Elliott, 711 A.2d at 1312; Commercial Union Ins. Co. v. Royal Ins. Co., 658 A.2d 1081, 1083 (Me. 1995); Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me. 1990); and Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 921 (Me. 1983), overruled on other grounds, Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989)).

**A.     FISC's Motion for Summary Judgment (Docket No. 55.)**

First Specialty's second amended complaint seeks a declaratory judgment on two counts. The first count concerns its duty to defend or indemnify either Maine Coast or Fore River as insureds in the Ablow litigation. (Sec. Am. Compl. ¶¶ 19-20, Docket No. 88.) The claims made in First Specialty's second count are not addressed in its motion for summary judgment. The claims made in the first count are narrowed, for purposes of summary judgment, to the duty to defend question. They are furthered narrowed to address only the duty to defend Maine Coast, First Specialty's named insured, in light of exclusion g, the professional services exclusion/endorsement, and the j.4 exclusion. That the motion is so targeted was conceded by First Specialty's counsel during the July 23, 2007, telephonic hearing.

*a. Exclusion g*

Exclusion g does not preclude a duty to defend because the exclusion does not apply to watercraft less than 26 feet in length that are not being used to carry persons or property for a charge, unless the insured owns the watercraft. The Ablow complaint does not foreclose the possibility that Maine Coast did not own the vessel (in fact, it did not). Nor does it foreclose the

8

possibility that the *Seawind II* is under 26 feet in length (in fact, it is). Finally, the complaint does not foreclose the possibility that the *Seawind II* was not being used to carry persons or property for a charge.

### b. *Professional services exclusion*

The professional services exclusion concerns damages "due to the rendering or failure to render any professional service." The Ablow suit does not concern damages due to the rendering of services or the failure to render services; it concerns damages due to the grounding of the vessels in question. The Ablow complaint does not foreclose the possibility that the damages did not arise due to the rendering or failure to render professional services. In fact the Ablow complaint makes no allegations at all relating to the rendering or failure to render professional services by anyone, including primarily Maine Coast.

### c. *Exclusion j.4*

Exclusion j.4 of the Policy excludes coverage for property damage to "personal property in the care, custody or control of the insured." Exclusion j.4 does not exonerate First Specialty of its duty to defend Maine Coast because the Ablow suit concerns consequential damages arising from the grounding of the vessels on the Ablow premises, not damage to "personal property in the care, custody or control of the insured."

First Specialty's motion for summary judgment must be denied because the allegations of the Ablow complaint do not foreclose findings that would give rise to a duty to defend Maine Coast in that litigation.

### B.      Fore River's Cross Motion (Docket No. 60)

With its counterclaim Fore River seeks a declaratory judgment that both it and Maine Coast[2] are covered for all losses arising from the incident and also that there is coverage for a separate occurrence arising from the manner in which the salvage contractor cut up the barge to haul it away (apparently this caused small shards of glass and metal to wash up on the Ablow's shorefront). (Fore River Counterclaim at 3-4, Docket No. 32.) In addition to opposing First Specialty's summary judgment motion Fore River has filed a cross-motion for summary judgment. (Docket No. 60.[3]) C-B Marine[4] and Guy Splettstoesser have joined in the cross motion. (Docket Nos. 65, 72.) The cross-motion focuses on shooting down the "watercraft exclusion" (exclusion g) and the professional services exclusion. I have already concluded that these exclusions do not independently relieve First Specialty of its duty to defend Maine Coast against the Ablow suit.

Fore River also moves for summary judgment on its proposition that the certificate of insurance (COI) issued by the Clark Agency conferred additional insured status on Fore River (Cross-Mot. at 17, Docket No. 59), a question that First Specialty flagged in its motion but chose not to target for purposes of its own summary judgment motion (Mot. Summ. J. at 8, Docket No. 55). Fore River's sole argument is that the COI serves as a written agreement between Fore River and Maine Coast for purposes of satisfying the conditions of the additional insured

---

[2]      During the telephonic hearing there was a suggestion that the motion also addresses First Specialty's duty to defend Splettstoesser. If there were a duty to defend Splettstoesser, it would only be due to his status as an employee of either Maine Coast or Fore River and, thus, would be derivative of First Specialty's duty to defend Maine Coast, as the insured, or Fore River, as a possible additional insured. In any event, Splettstoesser is not a defendant in the Ablow complaint, and the American Home complaint, in which he was a named defendant, has settled, rendering moot any discussion about a duty to defend.

[3]      The cross motion is incorporated in Fore River's opposition to First Specialty's motion, so the memorandum is located at docket number 59.

[4]      C-B filed a crossclaim and counterclaim in this litigation (Docket No. 31). C-B seeks a declaratory judgment that Fore River is an insured under Policy PGL77658 and that Fore River is entitled to defense and indemnity in connection with C-B's underlying lawsuit and the Ablow lawsuit. C-B also wants a declaration that there were two separate occurrences with separate limitations of liability.

endorsement. Whether Fore River is an additional insured does not turn on the contents of the Ablow complaint, unlike the foregoing questions about the duty to defend based on the relationship between the complaint and the relevant policy provisions.

The additional insured endorsement extends additional insured status to "any person or organization for whom you [Maine Coast] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." I conclude that the declaration Fore River seeks cannot be issued in the context of its motion for summary judgment because, even if the COI could satisfy the written agreement condition of the additional insured endorsement, there remains a genuine issue of material fact whether this accident bore any relation to a Maine Coast operation. Since I am unable to resolve the issue of whether Fore River could establish it was an insured under that portion of the policy language based on this summary judgment record, I see no reason to offer an opinion at this juncture regarding the question of whether the COI satisfies the written agreement requirement on the undisputed facts that have been put forth.

Finally, Fore River asks for a declaration that First Specialty has waived "late notice" as a ground on which to deny coverage, based on First Specialty's failure to ever raise that ground in any pleadings. (Cross-Motion at 16-17.) First Specialty waives any opposition to that request by failing to address it in its opposing memorandum. Moreover, First Specialty conceded its waiver during the telephonic hearing.

## CONCLUSION

First Specialty's motion for summary judgment (Docket No. 55) is DENIED. Fore River's cross-motion for summary judgment (Docket No. 60; see also Joinders, Docket Nos. 65, 72) is GRANTED, IN PART, to the extent it seeks the following declarations:

 (1) that First Specialty has a duty to defend Maine Coast in the Ablow litigation;

 (2) that First Specialty has waived "late notice" as a ground for denying coverage.

The cross-motion is DENIED, IN PART, to the extent it seeks any further declarations.

*So Ordered.*

Dated July 24, 2007       /s/ Margaret J. Kravchuk
               U.S. Magistrate Judge