UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FIRST SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 06-119-P-K |
| MAINE COAST MARINE CONSTRUCTION, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION[1]

First Specialty Insurance Corporation filed suit seeking a declaration that it has no duty to defend or indemnify in connection with losses and liabilities arising from the grounding of a tugboat and barge on Plum Island, Newbury, Massachusetts. This Memorandum of Decision addresses First Specialty's second motion for summary judgment, cross-motions for summary judgment filed by American Home Assurance Company and Fore River Dock & Dredge, a separate motion for summary judgment filed by Fore River Dock & Dredge, and motions to dismiss filed by Guy Splettstoesser and Fore River. (Doc. Nos. 111, 128, 132, 141, 144.) I find that the matter is controlled by the watercraft exclusion and grant summary judgment in favor of First Specialty.

### Facts

The following statement of facts is drawn from the parties' Local Rule 56 statements of material fact in accordance with this District's summary judgment practice. See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

the procedure); <u>Toomey v. Unum Life Ins. Co.</u>, 324 F. Supp. 2d 220, 221 n.1 (D. Me.

2004) (explaining "the spirit and purpose" of Local Rule 56).  When a statement offered

by a party is uncontested and is supported by a citation to record material having

evidentiary quality, the statement has been set forth herein essentially as offered.  When a

statement of fact is contested and the evidentiary record is capable of supporting

alternative findings of fact, the statement in dispute has been characterized, for purposes

of summary judgment only, in the manner favorable to, or favored by, the non-movant.

<u>Merch. Ins. Co. v. U.S. Fid. & Guar. Co.</u>, 143 F.3d 5, 7 (1st Cir. 1998).

First Specialty issued a commercial general liability policy (the "FS Policy") to

Maine Coast Marine Construction with a per occurrence limitation of $1 million and a

general aggregate limit of $2 million.  (Statement of Material Facts (SMF) ¶ 1, Doc. No.

112; Opposing Statement of Material Facts (OSMF) ¶ 1, Doc. No. 130.)  Section I,

Coverage A, subsection 2 of the FS Policy contains the following exclusions:

> **2. Exclusions**
> This insurance does not apply to:
> …
>
> **g. Aircraft, Auto or Watercraft**
> "Bodily injury" or "property damage" arising out of the ownership, maintenance,
> use or entrustment to others of any aircraft, "auto" or watercraft owned or
> operated by or rented or loaned to any insured.  Use includes operation and
> "loading or unloading".
>
> This exclusion does not apply to:
>
> (1) A watercraft while ashore on premises you own or rent;
> (2) A watercraft you do not own that is:
>     (a) Less than 26 feet long; and
>     (b) Not being used to carry persons or property for a charge[.]
> . . .

Fore River Dock & Dredge is a marine construction company.  Roger A. Hale is its president and sole shareholder.  Fore River leases equipment from C-B Marine pursuant to a master lease agreement.  (Id. ¶ 7.)   Maine Coast is a former marine construction company that went out of business in 2003.  (Id. ¶ 9.)  Guy Splettstoesser was an employee and part owner of Maine Coast at the time of the accident that gives rise to this suit.

On December 11, 2002, Roger Hale of Fore River told Splettstoesser that he would like Splettstoesser to tow the *DS64*, a 150-foot barge,[2] using the *Seawind II*, a 25-foot tug or "push boat," from a marine construction site on the Annisquam River in Gloucester, Massachusetts, to another site on the Merrimack River in Newburyport, Massachusetts.  (Id. ¶¶ 20, 24, 28-29.)  Splettstoesser undertook the job and, while en route to the new site went from pushing the *DS64* (using steel cables to fasten the vessels together), to towing it (using 300 feet of line), on account of shifting weather conditions. (Id. ¶¶ 36-38.)  By the time Splettstoesser reached the mouth of the Merrimack River it was dark, so he used radar to locate the sea buoy that marks the channel into the River. (Id. ¶ 40.)  Turning both the *Seawind* and the *DS64* into the channel involved some care. Splettstoesser performed a slow turn well clear of the sea buoy to prevent his tow line from catching on the buoy and also to ensure that the barge stayed in line with the tug,

---

[2]        The parties agree to the following facts concerning the *DS64*.  The *DS64* is a flat-bottomed barge that has been improved with a crawler crane on one end.  For purposes of marine construction projects, the *DS64* served as a floating platform, similar to floating docks one might see at a marina.  Like floating docks at a marina, the *DS64* traveled through the water to arrive where it was needed.  Thereafter, it served as a floating work platform.  The *DS64* had no motorized propeller or means of self propulsion; it relied on tugboats to shift and position it.  The *DS64* had no wheel, rudder, tiller or pilot home.  Nor did it have any means or method of steering or navigating.  The *DS64* had no captain, mate or crew.  The *DS64* was not equipped with navigational equipment or navigation lights.  The *DS64* was not required to be, nor was it, inspected by or registered with the United States Coast Guard.  (AHA's Statement of Add'l Material Facts ¶¶ 2-7, Doc. No. 130.)

lest it continue on a different trajectory and flip the tug over.  (Id. ¶ 41.)  Having

accomplished the turn, Splettstoesser piloted the vessels down the channel leading to the

River's mouth.  At this time the wind was northeasterly, at 20 to 30 knots, and the seas

were 8 to 10 feet.  (Id. ¶ 43.)   Pushed by the wind, the barge came alongside the tug as

the tug slowed on account of a standing wave at the River's mouth.  (Id. ¶ 44.)  The wind

and the waves pushed the *Seawind* and the *DS64* out of the channel and grounded them

on a beach on Plum Island.  (Id. ¶¶ 45-46.)

American Home Assurance Company (AHA) issued Fore River Dock & Dredge,

C-B Marine, and Roger A. Hale a "Protection & Indemnity" policy with a limitation of

liability of $1 million per occurrence (the "AHA policy").  (Id. ¶ 5.)  The AHA policy

contains a schedule of covered vessels that includes the *Seawind* and barge *DS64*. (Id. ¶

6.)

Several lawsuits arose from the foregoing facts.  Three lawsuits relevant to this

declaratory judgment action are:

> a.  American Home Assurance Co. v. Fore River Dock & Dredge, Inc. et al.,
> United Sates District Court of Massachusetts, C.A. No. 03-CV-10318 (WGY) (the
> "AHA Declaratory Judgment Action");
>
> b.  American Home Assurance Co. v. Maine Coast Marine Construction, Inc.
> et al., United States District Court of Massachusetts, C.A. No. 04-CV-12597
> (WGY) (the "AHA Subrogation Action"); and
>
> c.  Ablow v. Fore River Dock & Dredge, Inc. et al., United Sates District Court of
> Massachusetts, C.A. No. 05-CV-10347 (RGS) (the "Ablow Action").

(Id. ¶ 52.)

In the AHA Declaratory Judgment Action, AHA sought a determination of its

rights and obligations under a protection & indemnity policy issued to Fore River, C-B

Marine and Roger Hale (the principle of C-B Marine).  (Id. ¶ 53.)   The United States

4

District Court for the District of Massachusetts granted Fore River and C-B Marine partial summary judgment, concluding that AHA had an obligation to pay for the removal of the *Seawind*, the wreck removal of the *DS64* and the resulting beach clean up and the security details provided until the *DS64* wreckage was removed.  (Id. ¶ 54.)   The District Court found that tools on the *DS64* could constitute covered "cargo" and left the parties to determine the appropriate payment for the covered cargo.  After an additional hearing, judgment was entered in favor of Fore River and C-B Marine and AHA appealed.  (Id. ¶ 55.)  AHA, Fore River and C-B Marine settled the case while the decision was pending on appeal and AHA paid C-B Marine $96,500.  (Id. ¶ 56.)

In the AHA Subrogation Action, AHA sought reimbursement from Maine Coast and Splettstoesser for its payments made, or to be made, on behalf of Fore River and/or C-B Marine in connection with the removal of the *Seawind*, the wreck removal of the *DS64*, the security provided and the various clean up activities performed in connection with the incident.  (Id. ¶ 57.)  In June 2007, AHA, Maine Coast and Splettstoesser entered into settlement agreements and filed agreements of judgment, each in the amount of $372,495 plus costs and 12% prejudgment interest.  (Id. ¶ 59.)   The settlement agreements each specifically state that AHA will not enforce the agreed-to judgments against Maine Coast, its owner James LaPlante, or Splettstoesser.  Rather, AHA agreed to pursue First Specialty to satisfy the judgments up to a total of $372,495 plus costs and 12% pre-judgment interest.  (Id. ¶ 60.)  AHA conceded at deposition that it is not seeking to satisfy both judgments in full because that total amount ($744,990 plus costs and 12% interest) would be double the amount of indemnity payments made under the AHA

policy.  (Id. ¶ 61.)  To date, AHA has not exhausted its $1 million policy limit on indemnity payments and expenses paid in connection with the incident.  (Id. ¶ 65.)

The Ablow Action was reported settled to the Court on August 27, 2007.  (Id. ¶ 66.)  AHA expects to make a payment of $50,000 in return for Ablow's release of all claims.  (Id. ¶ 67.)

### The Pleadings

In its second amended complaint First Specialty advances declaratory judgment claims against five parties:  Maine Coast, Guy Splettstoesser, Fore River, C-B Marine, and AHA.  The complaint sets out two counts.  The first is denominated as "Ablow Lawsuit";  the second as "American Home Lawsuit."  Count I requests a declaration that First Specialty has no duty to defend or indemnify Maine Coast or Fore River in the Ablow litigation.  Count I runs exclusively against Maine Coast and Fore River.  (Sec. Am. Compl. ¶ 20, Doc. No. 88.)  Count II requests a declaration that First Specialty has no duty to indemnify or make contribution to AHA for its settlement with Maine Coast and Splettstoesser in the AHA lawsuit or to reimburse AHA or make contribution to AHA for obligations owed to Fore River in the Ablow suit.  Count II runs exclusively against AHA.  (Id. ¶ 22.)

AHA filed a counterclaim against First Specialty, asserting that First Specialty is responsible for the cost of the defense and indemnity AHA supplied to Fore River. Additionally, AHA asserts that First Specialty must pay the settlement figure arrived at between AHA and the defendants in AHA's underlying subrogation action (Maine Coast and Splettstoesser).  (AHA Counterclaim, Doc. No. 94.)

Fore River also filed a counterclaim against First Specialty, requesting a declaration that Fore River, Maine Coast and Splettstoesser are all covered under the FS Policy.  (Fore River Counterclaim, Doc. No. 93.)[3]

C-B Marine also filed a counterclaim against First Specialty.  In addition, it filed cross-claims against all of the other defendants.  (C-B Marine Counterclaim and Cross-Claim, Doc. No. 92.)

Guy Splettstoesser filed an answer, only, and did not assert any counterclaims or cross-claims.  (Splettstoesser Ans., Doc. No. 89.)

Maine Coast has been a defunct corporation since 2003 and its chair in this litigation has been essentially empty throughout the proceedings.

## Discussion

### A.  *The motions to dismiss*

At the time this litigation was commenced, Splettstoesser was an interested party with a stake in the question of whether insurance proceeds from First Specialty would be available to cover the damages arising from the grounding.  However, it is notable that none of the pleadings in this case, other than the cross-claim filed by C-B Marine, ever stated a claim against Mr. Splettstoesser.  On November 16, 2007, C-B Marine was terminated as a party when it became apparent that the settlement of the Ablow litigation and the resolution of another underlying litigation by C-B Marine against Maine Coast, Fore River and Splettstoesser extinguished C-B Marine's interest in the outcome of this litigation.  A "court-only" docket entry on that date reflects the termination of C-B Marine as a party.  On that same date, Guy Splettstoesser filed a motion to be dismissed

---

[3]    Fore River also sought to commence a third-party action, but that effort was not successful.  (See Doc. Nos. 103 & 108.)

as well, though he did not file a memorandum in support of his motion and merely sought to join in the motion filed by C-B Marine.  (Doc. No. 141.)  First Specialty opposes that motion, arguing that Splettstoesser is a necessary party and that there is a potential for future litigation arising from the grounding.  (Doc. No. 147.)  I conclude that Mr. Splettstoesser's request to be dismissed is appropriate in light of the fact that there are no actual claims pending in this litigation by or against Mr. Splettstoesser.  I now grant Splettstoesser's motion to be dismissed from the case without prejudice.

On November 30, 2007, Fore River also joined in C-B Marine's motion, arguing that it should be dismissed without prejudice because all of the underlying litigation has come to an end.  (Doc. No. 144.)  First Specialty opposes this motion for the same reasons it opposes Splettstoesser's request to be dismissed without prejudice.  (Doc. No. 148.)  Although Fore River, unlike Mr. Splettstoesser, is entangled in the pleadings, it is apparent from the summary judgment record that all of its pending claims against First Specialty have been subsumed by AHA's subrogation rights and that there is no longer any pending, underlying controversy upon which to tether First Specialty's declaratory judgment action, except with respect to the controversy between First Specialty and AHA.  After all, "[a] declaratory judgment action cannot be used to create a cause of action that does not otherwise exist," Sold, Inc. v. Town of Gorham, 2005 ME 24, ¶ 10, 868 A.2d 172, 176, and the only action that is now material is the action between First Specialty and AHA.  The potential for future litigation against Maine Coast, Fore River, or Mr. Splettstoesser by other property owners on Plum Island is not a sufficient justification for a declaratory judgment order to run against those parties at this time. "The controversy . . . must involve presently existing and specific facts, as opposed to

hypothetical or uncertain facts," <u>Annable v. Bd. of Envtl. Prot.</u>, 507 A.2d 592, 595 (Me. 1986), and no claim has been made for over five years.  It is plain that First Specialty and Fore River are only concerned here with the preclusive reach of the order this Court issues on the pending coverage.  Whether Fore River can avoid being bound by a final judgment in this action on claims pressed by its subrogee because it obtained a dismissal prior to the entry of final judgment based due to an intervening settlement that gave rise to the subrogated claims (which is not a simple matter even to articulate) is something that another court can address when and if the question should ever arise.  I now grant Fore River's motion to dismiss.  (Doc. No. 144.)  This renders moot Fore River's cross-motion for summary judgment (Doc. No. 128).  The claims pressed against the defunct Maine Coast would also be subject to dismissal for the same reasons, but no motion has been made on its behalf.  In fact, I can find no record of Maine Coast ever entering an answer to the second amended complaint or making a significant appearance in this litigation since the date of its original answer (Doc. No. 19).

**B.**      *The summary judgment contest*

First Specialty's summary judgment motion (Doc. No. 111) requests a declaration that no indemnity is available under the policy it issued to Maine Coast based on the operation of certain exclusions and other limitations in the policy.  AHA's objection and cross-motion (Doc. No. 132) requests an order that the exclusions and other provisions interposed by First Specialty do not preclude coverage in the circumstances of this case.

 "The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required."  <u>Plumley v. S. Container, Inc.</u>, 303 F.3d 364, 368 (1st Cir. 2002).  A party moving for summary

judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation.  Merch. Ins. Co., 143 F.3d at 7.  If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trialworthy controversy and summary judgment must be denied.  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

The pending motions present four legal issues:

1.      Whether the FS Policy's Section I, Coverage A, subsection 2(g) exclusion for certain watercraft bars coverage under the undisputed circumstances giving rise to this case;

2.      Whether the FS Policy's Section I, Coverage A, subsection 2(j) exclusion for damage to certain personal property bars coverage for losses claimed in any of the underlying litigation;

3.      Whether the FS Policy's endorsement excluding coverage for certain professional services bars coverage under the undisputed circumstances giving rise to this case; and

4.      Whether the FS Policy is primary or excess insurance under the undisputed circumstances giving rise to this case.

I have not addressed issues 2, 3 and 4 because I conclude that the first issue is dispositive.[4]

The watercraft exclusion states that the "insurance does not apply to . . . 'property damage' arising out of the ownership [or] use of any . . . watercraft owned or operated by or rented or loaned to any insured." This broad exclusion is then withdrawn with respect to a "watercraft you do not own that is: (a) [l]ess than 26 feet long and (b) [n]ot being used to carry persons or property for a charge." The term "watercraft" is not defined.

First Specialty argues in its motion for summary judgment that the watercraft exclusion bars coverage for the grounding incident because, although the *Seawind* is shorter than 26 feet in length, Mr. Splettstoesser was towing the 150-foot *DS64* behind the *Seawind*, meaning that Splettstoesser was using a watercraft in excess of 26-feet in length when the incident occurred. (Mot. Summ. J. at 17-21.) AHA responds that the exclusion turns on "operation" rather than "use," that only the tug was operated, and that a barge is not a "watercraft," in any event, because it is merely an inoperable floating platform and lacks any "motive power." (Obj. and Cross Mot. at 17, 20-22.) As a fallback position, AHA argues that there is ambiguity as to whether a barge is a watercraft and that, therefore, watercraft must be construed in a way that does not include a barge in its meaning. (Id. at 22-23.)

---

[4] The pending summary judgment motions do not address the possibility that the FS Policy is inapplicable to the underlying claims because Mr. Splettstoesser was not working as an agent or employee of Maine Coast when he grounded the *Seawind* and the *DS64*. Nor do they address the question of whether Fore River qualifies as an additional insured under the policy. In my earlier summary judgment ruling on the duty to defend I concluded that the parties had not demonstrated that the facts surrounding these matters were undisputed and that, consequently, judgment as a matter of law could not enter on them prior to trial. Nevertheless, in its current motion, First Specialty assumes that Splettstoesser and Fore River are covered by the policy and my ruling is likewise based upon the same assumption.

"In Maine, courts first examine relevant policy language to determine whether it is unambiguous; if so, it is enforced as written." W. World Ins. Co. v. Am. and Foreign Ins. Co., 180 F. Supp. 2d 224, 230 (D. Me. 2002).  Language of an insurance contract is ambiguous only if it is reasonably susceptible to more than one plausible interpretation when measured "from the viewpoint of 'an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.'" Peerless Ins. Co. v. Wood, 685 A.2d 1173, 1174 (Me. 1996); see also Am. Employers' Ins. Co. v. DeLorme Pub. Co., 39 F. Supp. 2d 64, 82 (D. Me. 1999).  The meaning of terms in an insurance contract and whether they are ambiguous is to be determined by the court as a matter of law.  Foremost Ins. Co. v. Levesque, 2005 ME 34, ¶ 7, 868 A.2d 244, 246.

I conclude that the term "watercraft" does not fairly permit the sort of distinctions that AHA would introduce to it requiring the existence of independent means of propulsion or "motive power."  There simply is no basis in the English language that calls for the term watercraft to be limited in this fashion.[5]  A barge reasonably comes within the meaning of the term just as much as a raft or rowboat would.  None of these crafts has any independent motive power, yet any might be used to convey people or objects from one place to another.  It is perfectly understood in ordinary speech that the category of watercraft includes rowboats and rafts despite the fact that neither has its own mode of

---

[5]     According to the Oxford English Dictionary's definition of "craft":  "The want in English of any general collective term for all sorts of 'vessels for water carriage' naturally made *craft* a useful stop-gap." Oxford English Dictionary, "craft" definition V (2d ed. 1989), *available online with subscription at* http://dictionary.oed.com/cgi/entry/50053051?query_type=word&queryword=craft&first=1&max_to_show =10&sort_type=alpha&result_place=2&search_id=be1v-ATq06V-7838&hilite=50053051.  In fact, it is hard to think of a more comprehensive term than watercraft to collect the varied kinds of conveyances that might be used to carry people and things through the water.  The term vessel is a possible substitute, although it appears that that term has come to have certain associations with larger watercraft, at least in certain circles.

power.  While there might be some room to quibble over whether a float or a barge tied to a dock or mooring might fairly be regarded as a watercraft, the facts of this case demonstrate that the *DS64* was being used as a conveyance and, in that circumstance, a barge would ordinarily be understood to be a watercraft.

AHA's other interpretive twist is to suggest that the exclusion turns on the concept of "operation."  Although the language of the exclusion does include the concept of operation, I find that the ordinary meaning of that term fairly encompasses movement by means of an application of external force, including here the movement of the barge by means of a tug connected with a tow line.  It is plain from the undisputed facts that moving the *DS64* over the ocean and turning it into the channel of the Merrimack River was an operation of no minor difficulty.  It is also plain that the grounding of both the *DS64* and the *Seawind* and the resulting property damage arose from that very operation.

Finally, AHA argues that, even if the watercraft exclusion applies to barge *DS64*, the operation of the 25-foot *Seawind* is separately covered by the policy, and it was the operation of the *Seawind* rather than the *DS64* that proximately causes the losses in question.  AHA argues that, so long as it can demonstrate that the losses in question arose from negligent operation of the *Seawind*, the "efficient proximate cause rule" requires that First Specialty indemnify the loss.  As AHA acknowledges, the Law Court has not yet recognized this doctrine of insurance law.  In any event, even if it were to embrace the doctrine, it would not apply in the circumstances of this case.  The efficient proximate cause doctrine is addressed to situations in which two or more *distinct* perils work concurrently to cause damage, and one or more of the perils is covered while one or more of the perils is excluded, such as when a loss is occasioned by both wind and water perils

13

but only the wind peril is covered.  See, e.g., Fajardo Shopping Ctr. of P.R. v. Sun

Alliance Ins. Co., 167 F.3d 1, 7-8 (1st Cir. 1999) (applying Puerto Rico law); Leonard v.

Nationwide Mut. Ins. Co., 499 F.3d 419, 431-32 (5th Cir. 2007) (applying Mississippi

law).  In these situations, courts hold that insurance is available for the covered peril if it

is the more "efficient" cause.  Fajardo Shopping Ctr., 167 F.3d at 8.  It is essential to the

doctrine that the causes in question be separate and distinct.  Vanderbrook v. Unitrin

Preferred Ins. Co., 495 F.3d 191, 223 (5th Cir. 2007) (collecting cases).

　　　　In AHA's view, coverage is not foreclosed by the watercraft exclusion because

Mr. Splettstoesser's negligent operation of the tugboat was the efficient cause of the loss.

(Obj. and Cross Mot. at 18-19.)  I conclude that the factual scenario agreed upon by the

parties in their statements of material facts does not call for an application of the efficient

proximate cause doctrine because the two causes characterized by AHA are not really

distinct as a matter of law.

> When . . . the evidence shows the loss was in fact occasioned by only a
> single cause, albeit one susceptible to various characterizations, the
> efficient proximate cause analysis has no application.  An insured may not
> avoid a contractual exclusion merely by affixing an additional label or
> separate characterization to the act or event causing the loss.

Chadwick v. Fire Ins. Exch., 17 Cal. App. 4th 1112, 1117, 21 Cal. Rptr. 2d 871, 874

(1993) (holding that builder's negligence and defective framing were not separate perils);

see also Kish v. Ins. Co. of N. Am., 883 P.2d 308, 311 (Wash. 1994) (holding that rain-

induced flood and the rain itself were not separate perils).  In operating the tugboat Mr.

Splettstoesser operated the barge as well and this incident would not have occurred but

for the presence of the barge and the peril created by Mr. Splettstoesser's attempt to

convey it down the channel into the Merrimack River.  Under facts such as these,

Splettstoesser's operation of the barge was the sole cause and therefore the efficient cause of the loss as a matter of law.[6]  Because that cause is an excluded peril, there is no coverage available under the Policy.

## Conclusion

The motions to dismiss filed by Guy Splettstoesser and Fore River (Doc. Nos. 141 & 144) are **GRANTED** and those parties are dismissed from this lawsuit on their own motions.  They are dismissed over the objection of First Specialty.  In light of said dismissals, Fore River's cross-motion for summary judgment (Doc. No. 128) is rendered **MOOT**.  With respect to the remaining parties and the claims between them, First Specialty's motion for summary judgment as to Count II (Doc. No. 111) is **GRANTED** and American Home Assurance's cross-motion for summary judgment (Doc. No. 132) is **DENIED**.  Judgment is entered for First Specialty on all counts of American Home Assurance's counterclaim.  Count I of the Second Amended Complaint is dismissed as moot.  The Court **DECLARES** that First Specialty has no duty to indemnify the losses occasioned by the grounding of the tugboat *Seawind* and barge *DS64* for the reasons stated in the body of this memorandum of decision.   This judgment is intended to dispose of all pending claims and all parties to this lawsuit, resulting in a final judgment.

***So Ordered.***

January 18, 2008                              /s/ Margaret J. Kravchuk
                                             U.S. Magistrate Judge

---

[6]      If there were two or more distinct causes, then the proximate cause question would likely be one for the factfinder.  However, where there is only one proximate cause the efficient proximate cause rule has no application as a matter of law.